# Beatrice Creamery Company, Appellee, v. Missouri Pacific Railroad Company, Appellant.

## Gen. No. 31,779.

1. CARRIERS—*right of one not holding bill of lading to recover damages from delay in carriage.* Under the provision of the Carmack Amendment, section 20, paragraph K, of the Interstate Commerce Act, that the liability of a common carrier is "to the lawful holder" of a bill of lading, a plaintiff is not prevented from recovering damages from a railroad company for delay in transporting a shipment because he does not produce the bill of lading, where the consignor surrendered the bill of lading to the carrier so that the purchaser, the plaintiff, could obtain the goods.

2. STIPULATIONS—*discretion in refusing to strike.* In an action for damages against a railroad company for delay in transporting a shipment, the court properly exercised its discretion in refusing to strike a written stipulation entered into by counsel for both parties

prior to the trial, and which tended to show that the car was not transported within the time provided by the schedule for trains, it not being contended that the stipulation did not state the facts correctly.

3. HARMLESS AND PREJUDICIAL ERRORS—*striking evidence of absence of negligence in action against carrier*. In an action for damages against a railroad company for delay in transporting a shipment, it was not materially prejudicial to the defendant for the court to strike out testimony of the witnesses that the derailment of cars might have been brought about by weather conditions, where the finding of the court that the defendant had not sustained the burden cast upon it to show the delay was not caused by its negligence was warranted by all the evidence.

4. DAMAGES—*delay by railroad in transporting shipment*. In an action for damages against a railroad company for delay in transporting a carload of eggs, a finding of damages as the difference between the market price of eggs at the time the car should have arrived and the lower price at the time the car was delivered, with interest, was warranted by the evidence.

Appeal by defendant from the Municipal Court of Chicago; the Hon. JAMES J. O'TOOLE, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1927. Affirmed. Opinion filed January 30, 1928. Rehearing denied February 11, 1928.

JOHN GIBSON HALE, for appellant.

GEORGE H. WHITE and DONALD J. DEWOLFE, for appellee; HOPKINS, STARR & HOPKINS, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

On a trial in the municipal court of Chicago before the court without a jury there was a finding and judgment in plaintiff's favor for $2,348.62 and the defendant appeals.

Plaintiff's claim was for damages alleged to have been sustained by reason of the failure of the defendant to transport, within a reasonable time, a carload of eggs from Concordia, Kansas, to Chicago.

The record discloses that on January 26, 1921, W. M. Evert of Concordia, Kansas, delivered a carload of

eggs to the defendant to be shipped by it to Pittsburgh, Pennsylvania. A bill of lading was issued by the defendant and given to Evert, who was named as consignor and consignee, with directions to the railroad company to notify the Beatrice Creamery Company of Pittsburgh. About the time the car reached Kansas City, Missouri, it was diverted by Evert to Chicago to be delivered to the Beatrice Creamery Company of Chicago. At the time the diversion order was given Evert surrendered the bill of lading to plaintiff and it does not appear whether a new bill of lading was issued. Evert was paid for the eggs by the plaintiff and the plaintiff also paid the freight for the transportation of the car to Chicago. It further appears from the record that the car of eggs was about 24 hours late in arriving at St. Louis, Missouri, and while the car was en route from that place to Chicago, the car in question and two other cars were derailed at Decatur, Illinois, where there was a further delay of about 40 hours. The eggs were taken from the car at Decatur and placed in another car and they did not arrive in Chicago so as to be available to plaintiff until February 2nd. The evidence further shows that there was a sharp drop in the market and that the eggs were worth considerable less on the 2nd of February than they were on the 29th, 30th and 31st of January, and it is to recover the loss plaintiff claims it has sustained by reason of such delay that this suit was instituted.

The defendant contends that the judgment is wrong and should be reversed because plaintiff did not produce the bill of lading and that he therefore cannot recover because, it is said, that under the Carmack Amendment, section 20, paragraph K, Interstate Commerce Act, the liability of a carrier is "to the lawful holder" of the bill of lading. Paragraph "K" above mentioned provides that a common carrier, such as

328 APPELLATE COURTS OF ILLINOIS.

Beatrice Creamery Co. v. Missouri Pac. R. Co., 247 Ill. App. 325.

the defendant in the instant case, shall issue a bill of lading for goods delivered to it for transportation and that such common carrier "shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or any common carrier * * * to which such property may be delivered." In the instant case the defendant issued its bill of lading for the car of eggs. Afterwards the bill of lading was surrendered to the defendant by the consignor at Kansas City, and when surrendered the agent of the defendant at Concordia, Kansas, wired its agent at Chicago to deliver the car "To Beatrice Creamery Co. direct. I hold original bill of lading. Will mail to you." And as stated, the eggs upon arrival at Chicago were delivered to the Beatrice Creamery Company, as directed by defendant's agent, without the production of any bill of lading. It is obvious that it was not intended by the provision of the Federal Act, above quoted, to relieve a common carrier who was liable to the owner of merchandise merely because the owner of the goods surrendered the bill of lading to the carrier so as to obtain his property. It is equally obvious that the owner of the goods being transported by a common carrier, and to whom a bill of lading has been issued, must, in the ordinary course of business, surrender it before he can obtain the goods. And it is clear that the law never intended that if the bill of lading was surrendered so that the owner could obtain his goods, he could not recover against the carrier where it otherwise would have been liable to him. The bill of lading having been surrendered to the defendant and the goods having been delivered to plaintiff at the defendant's request, no other person can have any claim for damages against defendant. It is protected because there is no bill of lading outstanding. There is no merit in the defendant's contention.

Complaint is also made by the defendant that the court erred in refusing to strike a stipulation entered into by counsel for the parties some time prior to the actual beginning of the trial. The stipulation covered the movement of the car in question from Concordia, Kansas, to St. Louis, Missouri, and tended to show that it was not transported within the time as provided by the railroad schedule for trains. This stipulation was signed by counsel for plaintiff and the then counsel for the defendant. It was reduced to writing and filed in the case. Afterwards the present counsel for the defendant came into the case. There is no contention, so far as we are able to ascertain, that the stipulation did not state the facts as they were. We think the discretion of the court was properly exercised in refusing to strike the stipulation.

A further contention is made that the court erred in striking out the testimony of certain of its witnesses who testified, by deposition, concerning the derailment of the car in question at Decatur. The testimony of these witnesses was offered by the defendant as tending to show that there was no negligence in the operation of the train, but that the derailment of the cars was brought about by weather conditions. We think the ruling of the court was not materially prejudical to the defendant. The conductor was not called nor was any member of the train crew. The witnesses that were called gave testimony that the train parted on account of the rainy weather and that they found no defect in the track nor apparently with the cars except that the couplers came apart. We have examined the testimony of these witnesses. Ochiltree, the train master, testified that the weather conditions might have contributed to the accident. He further testified that at the place of the wreck "There was no grade there and the track was absolutely straight." The witness Young, who was fore-

man of the wrecking crew, testified that in his opinion
the wreck was caused by "weather conditions and
the condition of the track  *   *   *—the track there is
around a curve and its being slippery the engine
might have slipped on the track." Stumpf testified
that he was superintendent of the Decatur division of
the railroad company and that "The only contribu-
tory thing that he could assign in this particular case
was the weather conditions and the fact that the train
was rounding a curve." We think the court aptly
observed, during the reading of the deposition of one
of these witnesses, "How does he (the witness) know
that it wasn't the sudden jerk of the engine starting
and stopping, something like that," that caused the
accident? The burden being upon the defendant to
show that the delay in the arrival of the car at Chi-
cago was not brought about by its negligence, and it
having failed to call any of the men who were in
charge of the train at the time the car was derailed,
and even considering only the testimony of the wit-
nesses as it appears in the record, we are clearly of
the opinion that we would not be warranted in dis-
turbing the finding of the trial judge to the effect that
the defendant had not sustained the burden cast upon
it. We are unable to say that the finding is against
the manifest weight of the evidence, but on the' con-
trary we are of the opinion that the evidence war-
rants the finding.

Plaintiff offered evidence to show that the market
price of eggs was 65½ cents a dozen at the time the
car should have arrived and that the market price of
eggs at the time the car was available on February 2nd
was much lower, and that this difference amounted to
$1,846.82. On this sum the court allowed $501.80 in-
terest, making a total of $2,348.62, the amount of the
judgment. Upon a careful consideration of all the
evidence in the record, we are of the opinion that the
finding was warranted. It is certain that we would

be unable to say that the finding on this question is against the manifest weight of the evidence. So far as we have been able to ascertain, no argument is made that the court was not warranted in allowing the interest item.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.